SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Borough of Englewood Cliffs v. Thomas J. Trautner (A-19-24) (089406)**

**Argued March 17, 2025 -- Decided May 7, 2025**

**FASCIALE, J., writing for a unanimous Court.**

The Court considers a challenge brought by plaintiff Borough of Englewood Cliffs (the Borough) to sanctions imposed by the trial court, which found that the Borough filed a complaint and an amended complaint in bad faith to harass, delay, and cause malicious injury to its former attorneys and a builder. Specifically, the Borough argues that it is immunized from the award of reasonable litigation costs and attorney fees by New Jersey's Frivolous Litigation Statute (FLS), N.J.S.A. 2A:15-59.1, and the doctrine of sovereign immunity.

Following the Court's 2015 order requiring judicial oversight of municipal housing obligations to preclude exclusionary development, the Borough filed an action seeking a declaration that it had discharged its constitutional affordable housing obligations. A builder intervened and opposed the motion, and the Borough retained several attorneys as counsel. After assessing the weaknesses of the Borough's case, the attorneys urged the Borough to settle. The Borough declined that advice and went to trial, but did not prevail. Thereafter, the Borough settled with the builder. The Borough Council passed a Resolution censuring the mayor for pursuing "needless" litigation against the "accurate" warnings of the attorney defendants. The Resolution also praised the attorney defendants. Thereafter, a municipal election occurred during which some new Borough Council members were elected. Under the newly constituted Council, the Borough filed a separate suit against the attorneys and the builder. That action led to this appeal.

Defendants demanded in writing that the Borough withdraw its complaint and amended complaint against them. They described in detail the frivolous nature of the Borough's pleadings and warned that if the Borough failed to withdraw the complaints, they would file motions to dismiss and seek sanctions. Despite those warnings, the Borough forged ahead.

Thereafter, defendants filed motions to dismiss for failure to state a claim pursuant to Rule 4:6-2(e). The trial judge granted those motions and entered multiple orders dismissing the Borough's pleadings with prejudice. Defendants also

1

moved for sanctions, and the judge awarded them attorney fees and costs, finding that the Borough acted in bad faith to harass, delay, and cause malicious injury by filing its frivolous pleadings. In total, the Borough was ordered to pay $216,484.45.

The Appellate Division affirmed, concluding, as relevant to the appeal before the Court, that "a public entity is not immune from the sanctions that can be imposed under the FLS." 478 N.J. Super. 426, 441, 451 (App. Div. 2024). The Court granted certification. 259 N.J. 323 (2024).

**HELD:** Municipalities and municipal corporations, as defined by N.J.S.A. 1:1-2, that engage in frivolous litigation are subject to sanctions under the FLS. The Supreme Court of the United States has recognized "that municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit," Jinks v. Richland County, 538 U.S. 456, 466 (2003), and neither the FLS nor any other substantive law in New Jersey has immunized municipalities from FLS liability for filing frivolous pleadings like the Borough was found to have filed here.

1. Enacted in 1988, the FLS serves both a punitive purpose, to deter frivolous litigation, and a compensatory purpose, to reimburse the party that has been victimized by the party bringing the frivolous litigation. The FLS has multiple sections. N.J.S.A. 2A:15-59.1(a)(1) provides that "[a] party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds . . . that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous." (emphasis added). N.J.S.A. 2A:15-59.1(b) explains the circumstances under which a judge may find that "a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous." (emphasis added). Reading those provisions in harmony, the Court finds that the Legislature used the terms "nonprevailing person" and "nonprevailing party" interchangeably in the FLS to advance its dual purposes, contrary to the Borough's argument that it is not a "nonprevailing person" within the meaning of the statute. Further, the Borough would be both a "party" and a "person" under the statute. N.J.S.A. 1:1-2 defines "person" to include "corporations," and it defines a municipality as a "municipal corporation," which includes, under the same definition, "cities, towns, townships, villages and boroughs." Thus, as a plaintiff who filed frivolous pleadings, the Borough is not only "any other party" but also a "person" under N.J.S.A. 2A:15-59.1(a)(1). The Court parts ways with the Appellate Division to the extent it held otherwise. See 478 N.J. Super. at 442. (pp. 11-16)

2. The Court explains why the Borough's arguments about the 1995 amendments, which added two sections to the FLS, are unavailing: the Legislature added to the FLS the entirety of subsection (a)(2), which applies to public entities, and the phrase "or public entity" in subsection (c) specifically to address nonparty municipalities

2

who are victimized by defending "present or former employees" against frivolous litigation, not to provide immunity to municipalities that engage in frivolous litigation themselves. The Court also explains that a case in which the Chancery Division held that the Division of Youth and Family Services (DYFS) may not be sanctioned under the FLS does not advance the Borough's position because DYFS was an executive branch agency, not a municipality. (pp. 17-21)

3. Turning to the doctrine of sovereign immunity, the Court explains that, although the Appellate Division framed the issue as "[w]hether a State and its agencies and political subdivisions are immune from the FLS," 478 N.J. Super. at 438, the focus in this case is on whether the doctrine of sovereign immunity immunizes municipalities, such as the Borough, from liability under the FLS for engaging in frivolous litigation. It is well-recognized that states have enjoyed state sovereign immunity in federal courts under the Eleventh Amendment of the U.S. Constitution. But "municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." Jinks, 538 U.S. at 466. Although the Eleventh Amendment pertains to state sovereign immunity in federal court, it is well-established that states enjoy sovereign immunity from suit in their own courts and may define the scope of that immunity. And municipal immunity is a concept distinct from sovereign immunity under state law as well. (pp. 21-23)

4. In Willis v. Department of Conservation & Economic Development, the Court explained that judicially created immunity protected municipalities from liability when carrying out governmental functions. 55 N.J. 534, 540-41 (1970). In response to Willis, the Legislature enacted the New Jersey Tort Claims Act (TCA), which addressed the immunity of public entities, including certain circumstances in which immunity is waived, in negligence actions -- not municipalities engaging in frivolous litigation. This case arises from a context entirely outside the TCA, and judicially created municipal immunity, to the extent it still exists, serves no barrier to holding the Borough liable under the FLS. The Borough's actions here were not the official conduct that judicially created municipal immunity existed to insulate. Indeed, as opposed to insulating municipalities from filing bad faith claims, the purpose of the FLS is to deter such conduct. The Legislature has not exempted municipalities from the FLS, and no other substantive law immunizes them either. (pp. 23-26)

**AFFIRMED AS MODIFIED.**

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion. CHIEF JUSTICE RABNER and JUSTICE HOFFMAN did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-19 September Term 2024

089406

Borough of
Englewood Cliffs,

Plaintiff-Appellant,

v.

Thomas J. Trautner, Albert Wunsch,
800 Sylvan Avenue, LLC, and
Chiesa Shahinian & Giantomasi, PC,

Defendants-Respondents,

and

Jeffrey R. Surenian,
Joseph Mariniello, Jr.,
Jeffrey R. Surenian and Associates,
LLC, and Mariniello & Mariniello, PC,

Defendants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
478 N.J. Super. 426 (App. Div. 2024).

Argued                          Decided
March 17, 2025              May 7, 2025

Scott D. Salmon argued the cause for appellant Borough
of Englewood Cliffs (Jardim Meisner Salmon Sprague &
Susser, attorneys; Scott D. Salmon, Tracy L. Lucas, and
John J. Zunin, of counsel and on the briefs).

1

A. Matthew Boxer argued the cause for respondents Thomas J. Trautner and Chiesa Shahinian & Giantomasi, PC (Lowenstein Sandler, attorneys; A. Matthew Boxer, Peter Slocum, and Julie A. Minicozzi, on the briefs).

Albert H. Wunsch, III, respondent, argued the cause on their own behalf.

Ezra D. Rosenberg argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Ezra D. Rosenberg, Rebecca Uwakwe, and Jeanne LoCicero, on the brief).

Phoenix N. Meyers, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel, and Brett Haroldson and Eric Intriago, Deputy Attorneys General, on the brief).

JUSTICE FASCIALE delivered the opinion of the Court.

In this appeal, plaintiff Borough of Englewood Cliffs (the Borough) challenges an award of reasonable litigation costs and attorney fees awarded against it pursuant to N.J.S.A. 2A:15-59.1, New Jersey's Frivolous Litigation Statute (FLS). We determine whether the FLS, or alternatively, the doctrine of sovereign immunity, immunizes the Borough, which the trial judge found filed a complaint and an amended complaint in bad faith to harass, delay, and cause malicious injury to its former attorneys and a builder, from that award of sanctions.

2

We hold that municipalities and municipal corporations, as defined by N.J.S.A. 1:1-2, that engage in frivolous litigation are subject to sanctions under the FLS. The Supreme Court of the United States has recognized "that municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit," Jinks v. Richland County, 538 U.S. 456, 466 (2003), and neither the FLS nor any other substantive law in New Jersey has immunized municipalities from FLS liability for filing frivolous pleadings like the Borough was found to have filed here.

We therefore affirm the Appellate Division's judgment as modified.

I.

In 2015, this Court entered an "order requiring judicial oversight of municipal housing obligations to preclude exclusionary development schemes." See In re Declaratory Judgment Actions, 446 N.J. Super. 259, 264 (App. Div. 2016) (detailing the events that led to such oversight and the order released in accompaniment to In re Adoption of N.J.A.C. 5:96 & 5:97, 221 N.J. 1 (2015)), aff'd as modified, 227 N.J. 508 (2017). In the wake of that order, the Borough filed an action seeking a declaration that it had discharged its constitutional affordable housing obligations (the Affordable Housing Litigation). A property developer, 800 Sylvan Avenue, LLC (Sylvan)

3

intervened in the Affordable Housing Litigation, opposed the Borough's requested relief, and separately filed an action for a builder's remedy.

In the Affordable Housing Litigation, the Borough retained as counsel Thomas J. Trautner of Chiesa Shahinian & Giantomasi, PC (together, CSG), Albert Wunsch, III, and Jeffrey R. Surenian and Jeffrey R. Surenian and Associates, LLC (together, Surenian) (collectively, attorney defendants).[1] After assessing the weaknesses of the Borough's case, the attorney defendants urged the Borough to settle. The Borough declined that advice and went to trial, but did not prevail. Thereafter, the Borough settled with Sylvan.

The Borough Council subsequently passed Resolution 20-132 censuring the mayor for pursuing "needless" litigation against the "accurate" warnings of the attorney defendants. The Resolution also praised the attorney defendants. It resolved: "The Council supports the actions of attorneys Surenian, Wunsch, Trautner and Mariniello and finds that they have been appropriate, professional and ethical." Thereafter, a municipal election occurred during which some new Borough Council members were elected. Under the leadership of the newly constituted Council, the Borough filed a separate suit against the attorney defendants and Sylvan (collectively, defendants), asserting

---

[1] The Borough also retained and sued Joseph Mariniello, Jr. and Mariniello & Mariniello, PC (together, Mariniello), but they did not seek fees or costs and are not parties to this appeal.

4

claims of professional malpractice, breach of contract, unjust enrichment, civil conspiracy, and aiding and abetting. That action led to this appeal.

Defendants demanded in writing that the Borough withdraw its complaint and amended complaint against them. They described in detail the frivolous nature of the Borough's pleadings and warned that if the Borough failed to withdraw the complaints, they would file motions to dismiss and seek sanctions. Despite those warnings, the Borough forged ahead.

Thereafter, defendants filed motions to dismiss for failure to state a claim pursuant to Rule 4:6-2(e). The trial judge granted those motions and entered multiple orders dismissing the Borough's pleadings with prejudice. In entering those orders, the judge provided a written opinion underscoring Resolution 20-132's express statement that "[t]he Borough has acknowledged that the [attorney defendants] handled the litigation with knowledge, skill and diligence" and explaining that "the record is replete with evidence that the Borough" disregarded the legal advice of counsel that cautioned against proceeding to trial. The Borough did not appeal from those orders.

Pertinent to this appeal, defendants filed motions under the FLS seeking sanctions against the Borough for all reasonable litigation costs and attorney fees. Applying the FLS, the judge found "the Borough, a municipality, body politic and a corporation to be a non-prevailing party" and determined that an

5

award of FLS sanctions against the Borough was not prohibited.  The judge then stated:

> [T]he court finds [the Borough] <u>acted in bad faith</u>. . . . [T]he court concludes the <u>sole purpose of the litigation was to harass, delay and cause malicious injury to [Sylvan] particularly, as well as the attorney defendants</u>.
>
> . . . .
>
> The court is left to conclude that the Borough finds it appropriate to waste taxpayers' dollars in pursuit of harassing, frivolous and malicious lawsuits in which it seeks to delay the implementation of the builder's remedy and construction of affordable housing; and to incur legal fees . . . .
>
> [(emphases added).]

The judge awarded attorney fees and costs to CSG, Surenian, and Sylvan, and costs to Wunsch, who was not eligible for attorney fees because he represented himself.  In total, the Borough was ordered to pay $216,484.45.

The Borough appealed to the Appellate Division, which affirmed in a published opinion.  <u>Borough of Englewood Cliffs v. Trautner</u>, 478 N.J. Super. 426 (App. Div. 2024).  Pertinent to the legal question presented in this appeal, the appellate court concluded that "a public entity is not immune from the sanctions that can be imposed under the FLS."  <u>Id.</u> at 441.  It then upheld the sanctions.  <u>Id.</u> at 451.  After briefing in the Appellate Division, Surenian and

the Borough entered into a partial stipulation of dismissal.  Thus, Surenian is not a party to this appeal.

We granted the Borough's petition for certification, which challenged only the award of sanctions.[2]  259 N.J. 323 (2024).  We also granted motions to appear as amici curiae filed by the American Civil Liberties Union of New Jersey (ACLU) and the Attorney General of New Jersey (AG).  Following oral argument, Sylvan and the Borough entered into a partial stipulation of dismissal.  The remaining defendants are therefore only CSG and Wunsch.

## II.

The Borough makes two primary arguments.  First, it contends that the plain text of the FLS renders "public entities," who engage in frivolous litigation, statutorily immune from liability.  The Borough acknowledges that, under the statute, "a <u>party who prevails in a civil action</u> . . . <u>against any other party</u> may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds . . . that a complaint, counterclaim, cross-claim or defense of the <u>nonprevailing person</u> was frivolous."  (quoting N.J.S.A. 2A:15-

---

[2]  In its petition for certification, the Borough explained that it had decided "only to appeal the one issue identified and voluntarily with dr[ew] and waive[d] its right to seek certification on all other issues."  Accordingly, the Borough has left unchallenged the Appellate Division's affirmance of the trial judge's findings that the Borough acted in bad faith to harass, delay, and cause malicious injury by filing its frivolous pleadings.

59.1(a)(1)).  But the Borough argues it is not a "person" or "party."  Instead, the Borough maintains that it is a "public entity":  a category distinct from a "party" or "person" under the FLS.  Interpreting language added to the FLS in 1995 -- subsection (a)(2), which discusses public entities, and the addition of "or public entity" to subsection (c), which now applies to "[a] party or public entity seeking an award under the" FLS -- the Borough asserts that the Legislature differentiated between "public entity," "party," and "person." Accordingly, the Borough argues that because the phrase "public entity" is absent from sections N.J.S.A. 2A:15-59.1(a)(1) and (b), it is statutorily immunized from liability.  Second, as a "public entity," the Borough asserts that state sovereign immunity insulates it from liability for engaging in frivolous litigation, which the Legislature has not expressly waived in the FLS.

CSG and Wunsch argue that the plain text of N.J.S.A. 2A:15-59.1(a)(1) authorizes sanctions against any nonprevailing party who pursues frivolous civil litigation, including the Borough.  They assert that N.J.S.A. 1:1-2 defines "person" in part to include "corporations," and it defines "municipality" and "municipal corporation" to include "cities, towns, townships, villages and boroughs."  Thus, they argue the Borough is a nonprevailing "party" and a "person" subject to the FLS.  As to N.J.S.A. 2A:15-59.1(a)(2) and (c), CSG and Wunsch maintain that those amendments authorize a "public entity" to

8

obtain reasonable litigation costs and attorney fees when required to defend a "present or former employee" who has been victimized by frivolous litigation, even if the "public entity" is not a "party" in that litigation. CSG and Wunsch assert that those amendments therefore do not statutorily immunize municipalities from FLS liability. Finally, they emphasize that municipalities do not enjoy sovereign immunity from liability under the FLS.

At oral argument, the AG took no position on whether the FLS applies to a municipality. Rather, the AG relies on the text of the FLS and the doctrine of sovereign immunity in asserting that the State cannot be liable under the FLS. Along those lines, the AG points out that "there are already judicial remedies to deter public entities from engaging in the type of frivolous litigation that the [FLS] targets," such as the availability of malicious prosecution and malicious abuse of process claims. Finally, even if the FLS applies to "some public entities," such as municipalities, the AG argues that the State cannot be subject to sanctions under the FLS "based on the doctrine of sovereign immunity."

The ACLU argues the FLS applies to all litigating parties. The ACLU urges this Court to interpret the FLS as a whole, rather than focus on the single reference to "person" in N.J.S.A. 2A:15-59.1(a)(1). The ACLU asserts that the text of the FLS holds all "nonprevailing parties" to the same standard, and that,

9

under the FLS, the singular reference to "nonprevailing person" is synonymous with "party."

## III.

We review questions of statutory interpretation de novo. Wiggins v. Hackensack Meridian Health, 259 N.J. 562, 574 (2025). To do so, "we look to the Legislature's intent as expressed in the statute's plain terms." Ibid. "There is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose . . . ." Fuster v. Township of Chatham, 259 N.J. 533, 547 (2025) (omission in original) (quoting Perez v. Zagami, LLC, 218 N.J. 202, 209-10 (2014)). "We ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citations omitted); see also N.J.S.A. 1:1-1 (stating that statutory "words and phrases shall be read" in context "and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language"). "If the plain language of a statute is clear, our task is complete." Savage v. Township of Neptune, 257 N.J. 204, 215 (2024). "[I]f there is ambiguity in the statutory language that leads to more than one plausible

10

interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

IV.

In 1988, the Legislature enacted the FLS. Toll Bros., Inc. v. Township of West Windsor, 190 N.J. 61, 67 (2007). Since its inception, the FLS has served two purposes. Ibid. First, the FLS "serves a punitive purpose, seeking to deter frivolous litigation." Ibid. (quoting Deutch & Shur, P.C. v. Roth, 284 N.J. Super. 133, 141 (Law Div. 1995)). Second, the FLS "serves a compensatory purpose, seeking to reimburse 'the party that has been victimized by the party bringing the frivolous litigation.'" Ibid. (quoting Deutch & Shur, 284 N.J. Super. at 141); see also Maureen E. Garde, New Jersey's Frivolous Claims Statute -- Taking a Closer Look, 23 Seton Hall L. Rev. 153, 157-83 (1992) (analyzing the origins and legislative history of the FLS).

To resolve the narrow legal question of whether the FLS -- or, alternatively, sovereign immunity -- immunizes the Borough from paying all reasonable litigation costs and attorney fees for filing its frivolous complaint and amended complaint, we begin with the text of the FLS as originally

11

enacted in 1988, keeping in mind those important punitive and compensatory purposes.

## A.

The FLS has multiple sections.  N.J.S.A. 2A:15-59.1(a)(1) provides:

> A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
>
> [(emphases added).]

The Borough made defendants parties when it filed a complaint against them.  And defendants prevailed in the civil action by successfully obtaining orders dismissing the Borough's complaint with prejudice.  Thus, each defendant is a "party" as that term is utilized in N.J.S.A. 2A:15-59.1(a)(1).  The Borough also fits within the term "any other party."  Indeed, the Borough is the plaintiff.

The Borough contends that to be responsible for litigation costs and attorney fees under the FLS, N.J.S.A. 2A:15-59.1(a)(1) requires that a judge find "that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous."  (emphasis added).  The Borough's

12

argument that it is not a nonprevailing "person" is misplaced for several reasons.

First, rather than focus on only one word ("person") in the first section of the FLS, we read statutory words in context with related provisions "to give sense to the legislation as a whole." DiProspero, 183 N.J. at 492; see also N.J.S.A. 1:1-1 (stating that statutory "words and phrases shall be read" in context). Context provides meaning. Norman J. Singer & Shambie Singer, 2A Sutherland Statutory Construction § 46:5 (7th ed. 2024) ("[E]ach part or section of a statute should be construed in connection with every other part or section to produce a harmonious whole."). "Where one section of an act deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two always should be harmonized." Williams v. State Parole Bd., 255 N.J. 36, 47 (2023) (alterations omitted) (quoting Norman J. Singer & J.D. Shambie Singer, 2A Sutherland Statutory Construction § 47:11 at 336 (7th ed. 2022)).

Thus, we read together N.J.S.A. 2A:15-59.1(a)(1), which requires a judge to find that a "nonprevailing person" generally must engage in frivolous litigation, and N.J.S.A. 2A:15-59.1(b)(1) and (2), which require a judge to make specific findings that a "nonprevailing party" engaged in frivolous litigation. Harmonizing those two provisions, as Williams and those

13

applicable canons of statutory interpretation instruct, provides context to the

FLS and "give[s] sense to the legislation as a whole." DiProspero, 183 N.J. at

492. For example, N.J.S.A. 2A:15-59.1(b)(1) and (2) provide:

> b. In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
>
> > (1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
> >
> > (2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.
>
> [(emphases added).]

Reading the general findings referenced in N.J.S.A. 2A:15-59.1(a)(1)

together and in harmony with the required specific findings that a judge must

make under N.J.S.A. 2A:15-59.1(b)(1) and (2) shows that the Legislature used

the terms "nonprevailing person" and "nonprevailing party" interchangeably in

the FLS to advance its dual purposes, supporting our conclusion that the

Borough is subject to FLS liability. Both terms target the same activity that

leads to liability under the FLS.

14

Indeed, in N.J.S.A. 2A:15-59.1(a)(1), the statute says that costs and fees may be awarded "if the judge finds . . . that a complaint, counterclaim, cross-claim or defense of the <u>nonprevailing person</u> was frivolous."  (emphasis added).  Later, in providing what qualifies as frivolous, section (b) addresses what is required "[i]n order to find that a complaint, counterclaim, cross-claim or defense of the <u>nonprevailing party</u> was frivolous."  (emphasis added).  Thus, because the sections refer to one another and both refer to the actor asserting the complaint, cross-claim or defense, the text of the FLS as a whole demonstrates that "nonprevailing person" and "nonprevailing party" are interchangeable.  Further, in section (a)(1), although the statute uses "nonprevailing person" to describe the actor asserting the frivolous claim, it also says that a prevailing "party" may be awarded costs and fees "against any other <u>party</u>," again demonstrating the interchangeable nature of the two words as used in the FLS.  (emphasis added).  Harmonizing the sections of the FLS reveals that the Legislature intended for the FLS to deem a "party" liable for asserting a frivolous claim and that, as utilized in the FLS, a "nonprevailing person" is a "nonprevailing party."

Second, although the FLS is unambiguous when read in harmony and as a whole, the legislative history provides additional support for harmonizing the statute's use of "party" with its use of the word "person."  The Sponsor's

15

Statement that accompanied the bill later enacted as the FLS, for example, also uses "nonprevailing party" interchangeably with "nonprevailing person" to describe the same actor -- the asserter of the frivolous claim:

> The purpose of this bill is to allow a party who prevails in a civil suit to recover reasonable attorney fees and litigation costs from the <u>nonprevailing person</u> if the judge finds that the legal position of the <u>nonprevailing person</u> was not justified and was commenced in bad faith solely for the purpose of delay or malicious injury, or that the <u>nonprevailing party</u> knew or should have known that the action was without any reasonable basis in law or equity.
>
> [<u>Sponsor's Statement to A. 1316</u> (<u>L.</u> 1988, <u>c.</u> 46) (emphases added).]

Third, even if there was a meaningful difference between "nonprevailing person" and "nonprevailing party," the Borough would be both a "party" and a "person" under the statute. N.J.S.A. 1:1-2, entitled "Words and phrases defined," which the Borough agrees applies, defines "person" to include "corporations." And it further defines a municipality as a "municipal corporation," which includes, under the same definition, "cities, towns, townships, villages and <u>boroughs</u>." (emphasis added). Thus, as a plaintiff who filed frivolous pleadings, the Borough is not only "any other party" but also a "person" under N.J.S.A. 2A:15-59.1(a)(1). We part ways with the appellate court to the extent it held otherwise. <u>See</u> <u>Trautner</u>, 478 N.J. Super. at 442.

16

Fourth, the Borough's arguments about the 1995 amendments are unavailing. The amendments added two sections to the FLS. Those amendments simply give a municipality under certain circumstances the right to recover sanctions under the FLS even if it is not a party to the litigation. N.J.S.A. 2A:15-59.1(a)(2) provides:

> When a public entity is required or authorized by law to provide for the defense of a present or former employee, the public entity may be awarded all reasonable litigation costs and reasonable attorney fees if the individual for whom the defense was provided is the prevailing party in a civil action, and if there is a judicial determination at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim, or defense of the nonprevailing party was frivolous.
>
> [(emphases added.)]

And relatedly, N.J.S.A. 2A:15-59.1(c) provides:

> c. A party or public entity seeking an award under this section shall make application to the court which heard the matter. The application shall be supported by an affidavit stating in detail:
>
>> (1) The nature of the services rendered, the responsibility assumed, the results obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, an itemization of the disbursements for which reimbursement is sought, and any other factors relevant in evaluating fees and costs; and

17

(2) How much has been paid to the attorney and what provision, if any, has been made for the payment of these fees in the future.

[(emphasis added.)]

The Legislature added to the FLS the entirety of subsection (a)(2), which applies to public entities, and the phrase "or public entity" in subsection (c) specifically to address nonparty municipalities who are victimized by defending "present or former employees" against frivolous litigation, not to provide immunity to municipalities that engage in frivolous litigation themselves. The plain language of the 1995 amendments does not immunize municipalities, such as the Borough. Although we need not look to extrinsic evidence given the plain language, the Sponsor's Statement supports our interpretation.

This bill would allow a municipality to recover legal costs incurred in defending a police officer against a frivolous complaint. The proliferation of these complaints in recent years has made the cost of defending against them a significant municipal budget item.

Municipalities are required by [N.J.S.A. 40A:14-155] to provide for the defense of their police officers against certain complaints. However, the law intended to discourage frivolous lawsuits, [N.J.S.A. 2A:15-59.1], permits only a party to such a suit to petition for the recovery of costs. This bill would also permit a municipality which defends its police officer against a

18

frivolous action to seek reimbursement of its legal costs.

[Sponsor's Statement to A. 1012 (L. 1995, c. 13).]

The Senate Community Affairs Committee further explained that the purpose of the amendments was to allow a public entity to recover costs under the FLS when it is not itself a party: "Because public entities that provide for the defense of their employees are not actually a party to the litigation, current law prohibits them from recovering costs and attorney fees." S. Cmty. Affs. Comm. Statement to A. 1012/S.1399 and 1290 2 (Oct. 13, 1994). Thus, we reject the notion that the 1995 amendments evince a legislative intent to immunize entities like the Borough from FLS liability for engaging in frivolous litigation.

Also, N.J.S.A. 2A:15-59.1(c) simply provides the mechanism for seeking a FLS award after a judge makes the requisite findings under N.J.S.A. 2A:15-59.1(a)(1) and (b)(1) or (2). Accordingly, to receive an award under the FLS, "[a] party who prevails in a civil action . . . against any other party," or a nonparty "public entity" who defends a "present or former employee" against frivolous litigation must apply "to the court which heard the matter" and support that application with an affidavit complying with N.J.S.A. 2A:15-59.1(c)(1) and (2).

19

Finally, the Borough urges us to reject the analysis from In re K.L.F., 275 N.J. Super. 507, 511 (Ch. Div. 1993) (finding that the FLS applies "to the State and all agencies and political subdivisions thereof") and to instead adopt the holding in DYFS v. P.M., 301 N.J. Super. 80, 82 (Ch. Div. 1997) (rejecting the reasoning of K.L.F. and holding that the Division of Youth and Family Services (DYFS) may not be sanctioned under the FLS). The Appellate Division also addressed those cases, agreeing with K.L.F. that "a public entity is not immune from the sanctions that can be imposed under the FLS." Trautner, 478 N.J. Super. at 441. Those trial court opinions are not binding or dispositive and go beyond our narrow holding as to the liability of the Borough in this case.

For example, in reaching different conclusions about whether DYFS, an executive branch agency rather than a municipality, can be sanctioned under the FLS, K.L.F. and P.M. analyzed N.J.S.A. 2A:15-60, which bars costs in "actions[s] brought by the state, or the governor, or any person for the use of the state." The judge in K.L.F. found that the FLS "supersedes N.J.S.A. 2A:15-60 and operates as an implied modifier of the latter and is, therefore, controlling." 275 N.J. Super. at 522. In P.M., the judge harmonized N.J.S.A. 2A:15-60 and the FLS and concluded that DYFS was not subject to the FLS. 301 N.J. Super. at 90, 94-95. But unlike K.L.F. and P.M., which dealt with

20

sanctions against DYFS, a state agency, we deal with whether a municipality (here, the Borough) is subject to the FLS. In addition, at oral argument, the Borough expressly waived reliance on N.J.S.A. 2A:15-60, and we therefore need not consider the interplay (if any) between N.J.S.A. 2A:15-60 and a municipality. Thus, any reference to K.L.F. and P.M. is misplaced.

In summary, the text and purpose of the FLS do not immunize the Borough from FLS liability for filing frivolous pleadings.

### B.

We now turn to the question of whether the Borough is immune under the doctrine of sovereign immunity. The Appellate Division framed the issue as "[w]hether a State and its agencies and political subdivisions are immune from the FLS." Trautner, 478 N.J. Super. at 438. Our focus in this case, however, is on whether the doctrine of sovereign immunity immunizes municipalities, such as the Borough, from liability under the FLS for engaging in frivolous litigation. We therefore do not reach the AG's separate request that we "[c]larify that the State is [i]mmune from FLS [l]iability."

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "It is

21

well-recognized that states have enjoyed state sovereign immunity in federal courts under the Eleventh Amendment" of the U.S. Constitution. Royster v. State Police, 439 N.J. Super. 554, 566 (App. Div. 2015), aff'd as modified, 227 N.J. 482 (2017). "[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution." Ibid. (alteration in original) (quoting Alden v. Maine, 527 U.S. 706, 713 (1999)). But "municipalities, unlike States, do not enjoy a constitutionally protected immunity from suit." Jinks, 538 U.S. at 466; see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.54 (1978) ("Nor is there any basis for concluding that the Eleventh Amendment is a bar to municipal liability. Our holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes." (citations omitted)). Professor Fred Smith explains:

> The Supreme Court has identified at least two reasons for this delineation. The first is the language of the Eleventh Amendment. . . . The second reason is sovereign immunity's historical roots. . . . Because states, not local governments, have this historical status as sovereigns, the Court has found that only states are entitled to sovereign immunity.
>
> [Fred Smith, Local Sovereign Immunity, 116 Colum. L. Rev. 409, 423 (2016) (emphasis added).]

Those legal principals notwithstanding, the Eleventh Amendment is inapplicable to this state court action: "[a]lthough the Eleventh Amendment

22

pertains to state sovereign immunity in federal court, it is well-established that states enjoy sovereign immunity from suit in their own courts and may define the scope of that immunity." Royster, 439 N.J. Super. at 567. New Jersey "courts have long recognized that an essential and fundamental aspect of sovereignty is freedom from suit by private citizens for money judgments absent the State's consent." Allen v. Fauver, 167 N.J. 69, 73-74 (2001). "[A] state may voluntarily waive its sovereign immunity," but "[a]n effective waiver requires 'a clear and unequivocal statement of the Legislature.'" Royster, 227 N.J. at 494 (quoting Allen, 167 N.J. at 77).

And, although the federal Eleventh Amendment does not control here, municipal immunity is a concept distinct from sovereign immunity under state law as well. See Richard P. Cushing, A Survey of Municipal Immunity in New Jersey, 3 Seton Hall L. Rev. 416, 417 (1972) ("The doctrine of municipal immunity, although often confused with its sister doctrine, sovereign immunity, has a separate and distinct history.").

When abrogating sovereign immunity in tort, this Court commented on the "liability of counties and municipalities, whose so-called 'governmental' activities were in other jurisdictions accorded the State's immunity on the thesis that such activities were performed as agents of the State itself." Willis

23

v. Dep't of Conservation & Econ. Dev., 55 N.J. 534, 539 (1970). Disagreeing with those other jurisdictions regarding tort liability, the Court observed:

> We have long entertained all types of tort actions against counties and municipalities, and when relief is refused, it is upon the basis of substantive principles of law we think should apply and not upon the proposition that those agencies are immune from suit. Again, it should be noted that the Legislature has not disapproved the doctrine that municipal corporations are suable in tort matters, nor, with one [inapplicable] exception, the rules of substantive law applied to them.
>
> [Ibid.]

Willis nevertheless emphasized

> that the State will not be held liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial cast, nor generally with respect to decisions calling for the exercise of official judgment or discretion. . . . In [the cited] cases, we invoked the same limitation with respect to the liability of municipal corporations.
>
> [Id. at 540-41 (citations omitted).]

Judicially created immunity afforded to the exercise of official judgment or discretion thus protected municipalities from liability when carrying out governmental functions. Ibid.; Visidor Corp. v. Borough of Cliffside Park, 48 N.J. 214, 224 (1966) (noting that the Court's recognition of such immunity "serves to protect municipalities against endangering financial demands and to permit their governing bodies to govern conscientiously for the public interest,

24

as they find it, without the fears and burdens of litigating such demands");

Amelchenko v. Borough of Freehold, 42 N.J. 541, 550 (1964) ("Public

officials must be free to determine [the general method of handling

snowstorms] without fear of liability either for themselves or for the public

entity they represent.  It cannot be a tort for government to govern.").

In response to Willis, the Legislature enacted the New Jersey Tort

Claims Act (TCA).  L. 1972, c. 45 (codified as amended at N.J.S.A. 59:1-1 to

:12-3).  In the TCA, the Legislature addressed negligence actions -- not

municipalities engaging in frivolous litigation.  See generally ibid.  It imposed

statutory immunity, id. at :2-1(a) ("a public entity is not liable for an injury");

and then waived that immunity in certain circumstances, see, e.g., id. at :2-2

(rendering public entities "liable for injury proximately cause by an act or

omission of a public employee within the scope of his employment").  The

Legislature also permitted the award of "costs ordinarily allowable in the

private sector" and "reasonable attorney's fees" to a successful claimant in an

action against a public entity or employee.  Id. at :9-5.

This case arises from a context entirely outside the TCA, and judicially

created municipal immunity, to the extent it still exists, serves no barrier to

holding the Borough liable under the FLS.  First, there is no historical

analogue to immunizing a municipality from sanctions when it initiates

frivolous litigation. Second, doing so would be contrary to public policy and would undermine the basis for judicially created municipal immunity, which insulated municipalities so they could govern without fear of litigation. See Visidor, 48 N.J. at 224; Amelchenko, 42 N.J. at 550. Here, the Borough's actions were neither "legislative . . . nor . . . the exercise of official judgment or discretion," Willis, 55 N.J. at 540, but rather, were in direct contravention to Resolution 20-132. That is not the type of official conduct that judicially created municipal immunity existed to insulate. Indeed, as opposed to insulating municipalities from filing bad faith claims, the very purpose of the FLS is to deter such conduct. See Toll Bros., Inc., 190 N.J. at 67. Thus, the Legislature has not exempted municipalities from the FLS, and like the Willis Court, we find that no other substantive law immunizes them either. See 55 N.J. at 539.

## V.

Our holding respects the dual purposes of the FLS -- to deter frivolous litigation and compensate parties that have been victimized by the party bringing such an action. Filing a complaint and an amended complaint in bad faith to harass, delay, or cause malicious injury subjects the Borough to FLS liability. Given that the text of the FLS provides no statutory immunity to

26

municipalities or municipal corporations, and because no other substantive law immunizes them in New Jersey, the Borough is liable under the FLS.

The judgment of the Appellate Division is affirmed as modified.

JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE FASCIALE's opinion. CHIEF JUSTICE RABNER and JUSTICE HOFFMAN did not participate.

27